UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
Buffalo Division

| | | |
|---|---|---|
| **NANCY KACZMAREK,** <br> **PLAINTIFF,** <br> V. <br><br> **D'YOUVILLE COLLEGE, LORRIE CLEMO, AND CHARLES J. URLAUB,** <br><br> **DEFENDANTS.** | | **Civil Action No.** <br><br> _____ <br><br> **Jury Trial Demanded** |

**COMPLAINT**

Plaintiff, Nancy Kaczmarek, alleges as follows:

**THE PARTIES**

1. The Plaintiff, Nancy Kaczmarek, is a natural person, female, over forty years of age, and is a member of the Grey Nuns of the Sacred Heart. Plaintiff resides at 309 North Street # 23, Buffalo, NY 14201

2. The Defendant, D'Youville College, is a private college located at 320 Porter Avenue, Buffalo, NY 14201. Lorrie Clemo is the President of D'Youville College. Charles J. Urlaub is the Chairman of the Board of Trustees of DYouville College.

**JURISDICTION AND VENUE**

3. The Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 2000e-5 and 28 U.S.C. §§ 1331 and 1343.

4. Venue is properly laid within the Western District of New York pursuant to 28 U.S.C. § 1391(b) in that the Plaintiff lives in the Western District of New York, Defendant is

1

located in the Western District of New York, and a substantial part of the acts or omissions giving rise to the claim occurred in the Western District of New York.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Plaintiff has exhausted all administrative remedies prerequisite to bringing this claim as follows:

6. On December 12, 2018 the Plaintiff filed a charge of discrimination with the New York State Division of Human Rights alleging unlawful discriminatory practice relating to employment in violation of Article 15 of the Executive Law of the State of New York (Human Rights Law) because of age, religion, and opposed discrimination/retaliation.  The matter was assigned NYSDHR Case Number 1098527.

7. The matter was cross filed with the United States Equal Employment Opportunity Commission (EEOC) and given Federal Charge Number 16GB901109.

8. On June 12, 2019 the New York State Division of Human Rights issued a Determination and Order After Investigation which found No Probable Cause and the matter was dismissed and the NYSDHR file was closed.

9. The Plaintiff timely requested EEOC review of the NYSDHR findings. The EEOC issued a Dismissal and Notice of Rights on October 11, 2019.  This date yields a final date for the Plaintiff to file a claim in federal court of January 9, 2020.

## TIMELINESS

10. When filing with a state agency the Plaintiff has three hundred (300) days to bring a claim when using a state agency. 42 U.S.C. 2000e.

11. The Plaintiff's DHR Complaint which was filed on December 12, 2018, alleged that the most recent discriminatory act occurred on September 7, 2018.  This gives a latest date

to file a claim with the Division of Human Rights of September 6, 2019. The earliest date for an act of discrimination to be included would be February 15, 2018.

## FACTUAL BACKGROUND

12. Plaintiff began working for the Respondent in 1981. She was awarded tenure in 1995 and over her career achieved the position of Professor of Education and also held the position of Archivist. She held these positions until September 7, 2018, when the Education Department was retrenched, the Archivist position was eliminated with no notice or consultation with its supervisor, and she was summarily discharged by the Defendant.

### Professor of Education

13. In August 2018 D'Youville College announced that the Education Department, in which the Plaintiff worked, was being eliminated ("retrenched") and that its respective programs and courses would no longer be offered by D'Youville.

14. The reason given for this retrenchment was lack of enrollment in the Teacher Education programs at D'Youville College and the fact that other area colleges offer teacher education. However, the Board of Trustees voted to stop enrolling students in education programs in the Fall of 2016. This vote ensured that education programs would have low or no enrollment: thus the Defendant dismissed the Plaintiff based on conditions the Defendant created.

15. In addition, in January 2019 the Defendant recommenced conducting the Masters of Curriculum and Instruction Program, a program developed and previously delivered by the Plaintiff and her fellow retrenched colleagues. To have students enrolled in January 2019 would at minimum have required student recruitment during the Fall 2018 semester, the same semester in which the Plaintiff was discharged. The Curriculum and Instruction Program was housed in

the Education Department before the department was retrenched. This program includes courses which the Plaintiff created and taught multiple times, and which she was well qualified to teach. The courses were instead taught by D'Youville administrators and part-time faculty, who, because of age and status, and possessing less experience, are paid less than the Plaintiff was at the time of discharge.

16. The Plaintiff was well qualified for the position of Professor of Education, with a Ph.D. in English Education, many professional publications and presentations, and professional involvement in state and national education program reviews. The Plaintiff's teaching evaluations were excellent, and she was involved in service and faculty activities at D'Youville. Thus, she exceeded requirements for the position.

17. D'Youville College faculty are unionized, represented by a branch of the American Association of University Professors (AAUP). After learning that the Curriculum and Instruction program was being offered in Spring 2019, the faculty union president, in a meeting that included the union's executive committee members, informed the Defendant that, based on signed agreements, the retrenched faculty should be reinstated. The Defendant responded that the college could not afford to reinstate the retrenched education faculty, thus indicating that the Defendant's decision to retrench the Plaintiff was based on finances due to the age and status of the faculty, not on enrollment.

18. President Clemo gave education faculty, including the Plaintiff, less than two weeks' notice before their termination. She gave the education faculty these unannounced termination notices at a time when academic hiring provides the least opportunity in its hiring cycle.

19. Since the D'Youville faculty was unionized in the early 1970s, all tenure-track faculty who were not renewed were given five months' to one year's notice that they were being released from their positions. Conversely, the Plaintiff was tenured and given only ten days' notice. This lack of notice is contrary to the Collective Bargaining Agreement and, as noted, the timing of the discharge severely impacted the Plaintiff's ability to find other positions. This was known to the Defendant.

20. In addition, the Memorandum of Agreement between the Defendant and the AAUP signed at the conclusion of retrenchment negotiations states: "In the event the Education Department is reinstituted anytime [sic] prior to the beginning of the 2022-2023 academic year, the members of the Education Department shall have a right to rehire." Thus, the Defendant willingly failed to abide by the Collective Bargaining Agreement between the Plaintiff's union and D'Youville's Board of Trustees, and the Memorandum of Understanding between the Plaintiff's union and the Defendant.

21. With respect to the administrative side of the discharge the Defendant did not adhere to either the Collective Bargaining Agreement (CBA), or the rules of the college. The President of D'Youville, Dr. Lorrie Clemo, refused to provide the union, of which Plaintiff was a member, with documents required by the CBA during severance negotiations. President Clemo also refused to participate in shared governance in terms of negotiating the retrenchment process.

22. When the Board of Trustees voted to stop student admission to education programs, they directed the Education Department to develop programs that would be attractive to potential students, thus increasing enrollment. However, before she closed the department, President Clemo and the Vice President for Academic Affairs, Mimi Steadman, were given multiple documents proposing prospective programs by education department faculty, including

5

the Plaintiff. These programs required administration's signatures before they could be approved by the NYS Education Department and be offered. President Clemo and Dr. Steadman never signed off on them.

23. President Clemo's letter to the Plaintiff also states "the closure of the education programs just prior to" her arrival as the President of D'Youville. This a false statement. The education programs were never closed. In fact they were only suspended with an intent to rebuild. The decision to suspend and rebuild, not to close, was agreed to at the time to by the Academic Committee of the Board of Trustees, the full Board of Trustees, the college president, the Vice President of Academic Affairs, and the Dean of the School of Arts, Sciences and Education.

24. Up to the point of the Plaintiff's departure the education department had been exploring the viability of offering an online master's degree to students in India. There were issues of tuition, which was likely too high to attract students. This issue was never addressed as President Clemo failed to properly research and market the online master's degree to potential students in India.

25. President Clemo failed to sign and submit to the New York State Education Department four graduate certificate programs that would have allowed the education department to begin admitting students in the spring of 2019. Thus, the only semester that the education department would actually have had no students enrolled in its programs, which was a choice made by administration, was Spring 2018. If the India Master's Degree program had been properly researched, marketed, priced and executed, that program would have had students enrolled in the Fall of 2018. Further, D'Youville College would have been on track to admit students into newly created teacher certification programs, a market that is recovering and

6

predicted to thrive, in the Fall of 2019—one year earlier than was agreed to by the Board of Trustees and the administration.

**Archives**

26. In addition to losing her position as Professor of Education, the archivist position the Plaintiff held was eliminated because the Defendant considered it part of the Plaintiff's job as Professor of Education. However, prior to the Plaintiff obtaining the position of archivist in August 2016, which was before the Trustees suspended student admission to the education programs, it was always a part-time administrative job under the control of the Head Librarian. The archivist position had been in existence since 1965 and had been held by a Grey Nun for all but five years since then.

27. Plaintiff states that Dr. Marge Goodman, the union president, had a meeting with Dr. Mimi Steadman, Vice President of Academic Affairs on August 24, 2018, during which Dr. Goodman asked Dr. Steadman about the Plaintiff's position with archives. Dr. Steadman responded that it would no longer exist because it was a job created just for the Plaintiff. Dr. Goodman informed the Plaintiff of this, which came as a great shock to the Plaintiff. She believed that she would continue to have a part-time job with D'Youville.

28. Plaintiff notes that Dr. Steadman never told her directly about this move, nor did she consult with Rand Bellavia, the Head Librarian, to whom the Archivist reports. In fact it was the Plaintiff who told Mr. Bellavia of her removal as Archivist.

29. Plaintiff was committed to her work as Archivist and was highly thought of in this position by Mr. Bellavia and the rest of the library staff. Expecting to continue in this position even after she retired from full-time work, as did several of her predecessors, she pursued professional development opportunities, including becoming a Certified Archivist.

7

30. Plaintiff complained about her dismissal to Dr. Steadman on September 11, 2018, and to Dr. Clemo on October 2, 2018. From the time that the union president was notified on August 6, 2018, the union complained about the retrenchment of the Education Department. On September 5, 2018, Plaintiff also sent an e-mail to the President of the Board of Trustees—and specifically to the president of the Board, C. J. Urlaub—on behalf of herself and the five others in the education department who were losing their jobs. There was no response to this e-mail.

31. The timing of this dismissal, coming as it did at the end of August 2018, precluded Plaintiff from searching for comparable work in academia. The typical process for obtaining positions in academia takes about a calendar year. The college administrators were well aware of this fact.

32. As a result of this timing of the Plaintiff's termination from both positions, including one she thought would continue after the closing of the Education Department, she suffered serious financial and emotional distress.

33. Plaintiff notes that many of the classes she taught were still being taught after her discharge.

34. Plaintiff further notes that she was not offered any other position by the Defendant though this is specified in the AAUP-DYC contract, which notes that positions in other areas of the college will also be looked at for tenured faculty who lose their jobs. In fact, the letter of dismissal states, "there are no other suitable, available positions at the College," indicating that minimal effort was put into looking for other positions.

35. Neither the union president, as required by contract, nor other department supervisors were consulted about possible open positions before the letter of dismissal was sent. Plaintiff states there were positions available. Dr. Steadman looked only at teaching positions

and found none, although Plaintiff is qualified to teach in the English Department and the Educational Leadership Program.

36. As a Grey Nun and longtime employee of D'Youville, Dr. Kaczmarek was also uniquely qualified for the open position of Chief Mission Officer. This job was never mentioned as a possibility for the Plaintiff, nor was she invited to apply for it.

## FIRST CAUSE OF ACTION
## UNLAWFUL DISCRIMINATION BASED ON AGE
## IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT
## 29 U.S.C. 1625 ET. SEQ.

37. Plaintiff repeats each and every allegation set forth herein in preceding paragraphs as though fully set forth herein.

38. The *prima facie* elements of discrimination claims under the ADEA are "not onerous."[1] A plaintiff may make out a *prima facie* case with either circumstantial or direct evidence of discriminatory intent.[2] Circumstantial evidence is by far the most common. A plaintiff making out a *prima facie* case of discrimination with circumstantial evidence must 1) identify a protected class, 2) identify an adverse action, 3) show that a) the Plaintiff was qualified for the job and b) that the work still being performed.[3]

**Element 1) Protected Classes**

39. Sister Kaczmarek is over the age of forty.

**Element 2) Adverse Actions**

40. Sister Kaczmarek was issued a notice of dismissal from her position with the Defendant on September 7, 2018.

---

[1] Texas Dept. of Community Affairs v Burdine, 450 US 248, 253 [1981]
[2] Swierkiewicz v. Sorema N. A., 534 U.S. 506, 511-12, 122 S. Ct. 992, 997, 152 L. Ed. 2d 1 (2002), *citing Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 121 (1985).
[3] McDonnell Douglas Corp. v Green, 411 US 792, 802 [1973], *see also Young v. UPS*, 135 S.Ct. 1338 (2015).

41. The dismissal did not follow the rules and practices of the Defendant. Further the dismissal was in violation of the existing Collective Bargaining Agreement.

42. Sister Kaczmarek was well qualified, as both an educator and a member of the founding religious congregation of D'Youville, to assume suitable administrative and teaching positions at the College in accordance with the Collective Bargaining Agreement.

43. Sister Kaczmarek was not offered any other position.

44. There are untenured, younger, lower-salaried and less experienced individuals who occupy positions the Plaintiff could have competently assumed.

45. Upon information and belief there are individuals who have positions similar to those that would have been available to the Plaintiff and these individuals are both younger and less qualified than the Plaintiff.

**Element 3 (a) Plaintiff was Qualified for the Jobs Held and Applied For**

46. Sister Kaczmarek -- an exceptionally well qualified professor -- had the seniority, education and experience to assume a host of other faculty or administrative positions at the College. Plaintiff was also well qualified for the position of archivist and improved her qualifications over time.

**Element 3 (b) Work was Still Being Performed**

47. The courses that Sister Kaczmarek had taught are currently being marketed and taught by low-cost adjuncts at the behest of the Defendant.

48. Sister Kaczmarek also held the position of archivist, which was not related to her teaching duties as a professor of education, Sister Kaczmarek was also removed from this position based on incorrect statements about the origin of the position of Archivist and Sister Kaczmarek's role in that position.

**Additional Evidence of Age Bias**

49.     Individuals who are younger, lower-salaried, less qualified and less experienced than the Plaintiff have been appointed to teaching and administrative positions.

## SECOND CAUSE OF ACTION
## UNLAWFUL DISCRIMINATION BASED ON RELIGION
## IN VIOLATION OF THE TITLE VII 42 U.S.C. 2000E ET. SEQ.

50.     Sister Kaczmarek repeats each and every allegation set forth herein in preceding paragraphs as though fully set forth herein.

51.     To establish a prima facie case of discrimination based on, religion, the plaintiff must show that (1) she is a member of a protected class, (2) she was subject to discrimination with respect to her compensation, terms, conditions, or privileges of employment, (3) the discrimination was on the basis of religion, (4) the behavior was sufficiently severe or pervasive enough to alter the terms or condition of her employment, and (5) the employer was liable for the behavior. 42 U.S.C. 2000e-2; *Henson v. City of Dundee*, 682 F.2d. 897 (1982).

52.     Sister Kaczmarek is of the Roman Catholic faith and is a member of the Grey Nuns of the Sacred Heart, the religious congregation that founded D'Youville College, owned it until 1972, and had members staffing it until Sister Kaczmarek's firing in 2018. She was the last Grey Nun employed at D'Youville. The presence of qualified Grey Nuns at D'Youville indicates continuity and importance of the history and mission and is particularly relevant in the position of archivist, as evidenced by the presence of retired Grey Nuns in that role. Plaintiff is well qualified for employment at D'Youville.

53.     The Defendant is aware of Sister Kaczmarek's religion and her affiliation with the Grey Nuns of the Sacred Heart.

54. At a meeting with Dr. Mimi Steadman, Vice President of Academic Affairs on August 24, 2018, during which Plaintiff's position with archives was discussed, Dr. Steadman responded that the archivist position would no longer exist because it was a job created just for the Plaintiff.  Dr. Steadman further stated, "The nun must go."

55. Defendant is well aware the position of Archivist was created in 1965 and that the Plaintiff had occupied the position only since August of 2016.

56. Defendant's eliminating the archivist position without any consultation with the Head Librarian or investigation into the history of the position as long held by Grey Nuns is evidence of bias and discriminatory intent based on religion.  The intent was to remove the last Grey Nun employed at D'Youville.

### THIRD CAUSE OF ACTION
### UNLAWFUL RETALIATION
### IN VIOLATION OF
### TITLE VII 42 U.S.C. 2000E ET. SEQ.

57. The Plaintiff realleges and reasserts the allegations contained in paragraphs above as though fully set forth herein.

58. To establish a complaint of retaliation it must be shown that 1) there was a complaint of discrimination by Sister Kaczmarek regarding actions by the Defendant, 2) the Defendant was aware of this and; 3) the Defendant engaged in actions that would likely dissuade a reasonable person from pursuing or supporting a claim of discrimination. (See *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 54, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)).

59. Plaintiff complained to Dr. Steadman on September 11, 2018, and to Dr. Clemo on October 2, 2018.  From the time the union president was notified on August 6, 2018, the union complained about the retrenchment.  On September 5, 2018, Plaintiff also sent an e-mail to

the Board of Trustees—and specifically to the president, C. J. Urlaub—on behalf of herself and the five others in the education department who were losing their jobs.

60. There was no evidence of any investigation of Sister Kaczmarek's complaints of discrimination. No response was received to the e-mail to the Trustees.

61. Note should be taken that this failure to investigate, in and of itself, can be dissuasive and thus an act of retaliation. It is true that an employer's investigation may be considered retaliatory only if the investigation is "conducted in such an egregious manner as to dissuade a reasonable worker from making or supporting a charge of discrimination." *Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 146 (2d Cir. 2014). However, in this instance no investigation at all was undertaken and Sister Kaczmarek was financially burdened and subjected to deep emotional distress when her termination was carried through.

62. These actions would dissuade a reasonable person from making or supporting a charge of discrimination.

**WHEREFORE**, Plaintiff respectfully requests from this Court the following relief:

    A. A judgment that the defendant violated the Plaintiff's rights under the Age Discrimination in Employment Act and award the Plaintiff economic damages in an amount to be determined at trial and compensation for her emotional distress;

    B. A judgment that the defendant violated the Plaintiff's rights under Title VII, 42 U.S.C. 2000e et. seq., and award the Plaintiff economic damages in an amount to be determined at trial and compensation for her emotional distress;

    C. The Defendant to pay all medical costs incurred by Plaintiff as a result of the stress and anxiety resulting from the discrimination she suffered, including any and all diagnostic analysis, treatment and therapy, and follow up therapy.

    D.    The Defendant to pay Plaintiff the costs and disbursements of this action, together with reasonable attorneys' fees;

    E.    The Plaintiff to have such other and further relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues properly trial by jury in this action.

Dated:    January 8, 2020

Respectfully Submitted,
Plaintiff
By Her Attorneys

  **/s/  Lindy Korn**
LINDY KORN, ESQ.
Attorney for Plaintiff
Law Office of Lindy Korn, PLLC
Electric Tower, Ninth Floor
535 Washington Street
Buffalo, New York 14203
716-856-5676
716-507-8475 (facsimile)
E-Mail: lkorn@lkorn-law.com