UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NANCY KACZMAREK,

                          Plaintiff,

          v.                                                    **DECISION AND ORDER**
                                                                       20-CV-22S
D'YOUVILLE COLLEGE,
LORRIE CLEMO,

                          Defendants.


## I.      Introduction

       This is an age and religion employment discrimination and retaliation action by

Plaintiff Sister Nancy Kaczmarek against her former employer, then known as D'Youville

College (now D'Youville University; hereinafter "D'Youville") and its president Dr. Lorre

Clemo, Ph.D. (Docket No. 1, Compl.).

       Sister Kaczmarek was a Professor of Education and archivist at D'Youville.   In

2018, D'Youville decided to lay off (or as it termed "retrench") the faculty of its Education

Department, leading to D'Youville firing Plaintiff from both positions.   In January 2019,

D'Youville recommended establishing a Masters of Curriculum and Instruction program

but refused to reinstate retrenched Education Department faculty (including Sister

Kaczmarek).

       Before this Court is Defendants' Motion for Summary Judgment (Docket No. 44[1]).

For the reasons stated herein, Defendants' Motion (Docket No. 44) is granted in part,

---

[1]In support of their Motion, Defendants submit their Statement of Undisputed Material Facts, Memorandum of Law, the Declaration of Dr. Lorrie Clemo with exhibits, Docket No. 44; and Defendants' Reply Memorandum, Docket No. 52.

denied in part.  Issue of fact remain for potential trial on whether Defendants discriminated against Sister Kaczmarek in terminating her part-time position as archivist because of religion.

## II.   Background

### A.  Facts Alleged in the Complaint (Docket No. 1)

Sister Kaczmarek is a member of the Grey Nuns of the Sacred Heart (Docket No. 1, Compl. ¶ 1) and earned a Ph.D. in English Education (id. ¶ 16).  She worked for D'Youville since 1981, awarded tenure in 1995 as Professor of Education and (since 2016) also served as college archivist (id. ¶¶ 16, 26).  Sister Kaczmarek had excellent teaching evaluations and was involved in service and faculty activities at D'Youville (id. ¶ 16).  Sister Kaczmarek also claims she was qualified to teach English and to teach in the Education Leadership Program (id. ¶ 35) while also deemed highly thought of as an archivist by the Head Librarian and library staff (id. ¶ 29).  Sister Kaczmarek believed she would continue as archivist even after retiring from full-time teaching as had her predecessors as archivist.  She obtained certification as a Certified Archivist.  (Id.)

Sister Kaczmarek held those positions until September 7, 2018, when the Education Department was "retrenched" and D'Youville eliminated the archivist position. (Id. ¶ 12.)

In August 2018, D'Youville announced that it eliminated or "retrenched" the Education Department due to diminished enrollment in its teacher education programs and the availability of teachers' education at other area colleges (id. ¶¶ 13-14).  Sister

---

In response to this Motion, Plaintiff submits her original Memorandum of Law with exhibits, Docket No. 48; her Statements of Fact, id.; her amended Memorandum of Law, Docket No. 49.

Kaczmarek claims, however, that the D'Youville Board of Trustees voted to stop enrolling education students in Fall of 2016, ensuring that the Education Department would have lower or no enrollment and D'Youville creating the condition for terminating Sister Kaczmarek (id. ¶ 14).  The Board directed the Education Department to develop other programs to increase enrollment (id. ¶ 22).  Dr. Clemo received various proposals from the Education Department faculty to increase enrollment (including recruiting students from India for a master's program) but Dr. Clemo did not approve them (id. ¶¶ 22, 24).  Dr. Clemo did not sign or submit graduate certificate programs to the New York State Education Department that would have allowed education students to begin studying in 2019, missing opportunities for potential graduate students from India or for those seeking teaching certifications (id. ¶ 25).

D'Youville also eliminated the archivist position held by Sister Kaczmarek, deeming that part of her duties as a Professor of Education (id. ¶ 26).  She claims, however, that the archivist was a part-time administrative position under the Head Librarian and was held by a Grey Nun from its creation in 1965 (save for five years) (id.).  Sister Kaczmarek learned that the archivist position no longer existed and it was created just for her (id. ¶ 27).  The Head Librarian, however, was not consulted about the termination of the archivist position; Sister Kaczmarek told Rand Bellavia, the Head Librarian, of the removal (id. ¶ 28).

Sister Kaczmarek complained about her dismissals to Dr. Clemo and University administration as the AAUP complained about the retrenchment of the Education Department (id. ¶ 30).

3

In January 2019, D'Youville recommended conducting a Masters of Curriculum and Instruction Program ("C&I Program"), a program Sister Kaczmarek and retrenched faculty previously taught (id. ¶ 15; see Docket No. 44, Defs. Memo. at 7).  Faculty at D'Youville are represented by the American Association of University Professors ("AAUP").  Upon learning of the University's plan, the AAUP local president argued to D'Youville that retrenched faculty should be reinstated for that program.  (Docket No. 1, Compl. ¶ 17.)  D'Youville replied that it could not afford to reinstate the retrenched faculty (id. ¶ 18).  Sister Kaczmarek claims that D'Youville's decision was based upon the age and status of the faculty and not on the size of enrollment (id.).

Sister Kaczmarek next contends that she and the other retrenched faculty were fired with less than two weeks' notice (id.), with tenured faculty given only 10 days' notice while tenure-track faculty who were not renewed were given five months' to one year's notice (id. ¶ 19).  Sister Kaczmarek was tenured and was given only 10 days' notice, which she claims is contrary to the collective bargaining agreement with the AAUP (id.).  The firing in August 2018 precluded Sister Kaczmarek from searching for comparable work in academia, with the search process usually taking a calendar year, timing D'Youville administrators were well familiar with (id. ¶ 31).  Thus, Sister Kaczmarek suffered financial and emotional distress (id. ¶ 32).  Meanwhile, many of the courses she taught continued to be taught at D'Youville (id. ¶ 33).

In addition, D'Youville and the AAUP entered a Memorandum of Agreement that provided if the Education Department were reinstituted, retrenched faculty would have a right to be rehired (id. ¶ 20).  Sister Kaczmarek, however, was not offered any other position at D'Youville (id. ¶ 34) while the AAUP president and department heads at

4

D'Youville were not consulted about possible openings (<u>id.</u> ¶ 35).  Further, she was not considered for the then-open position of Chief Mission Officer, a position held by a Grey Nun (<u>id.</u> ¶ 36).

On December 12, 2018, Sister Kaczmarek filed a charge of discrimination with the New York State Division of Human Rights and cross-filed with the Equal Employment Opportunity Commission ("EEOC") (Docket No. 1, Compl. ¶¶ 6, 7; Docket No. 44, Clemo Decl. ¶ 19, Ex. B).  On June 12, 2019, the New York State Division of Human Rights issued a Determination and Order after Investigation which found no probable cause, dismissing the matter (Docket No. 1, Compl. ¶ 8; Docket No. 44, Clemo Decl. ¶ 19, Ex. C; <u>see</u> Docket No. 44, Defs. Statement ¶ 19).  On October 11, 2019, the EEOC issued its Dismissal and Notice of Rights (Docket No. 1, Compl. ¶ 9; Docket No. 48, Pl. Ex. 10). Plaintiff alleges that she commenced this action within 300 days of the State Division of Human Rights' action (Docket No. 1, Compl. ¶¶ 10-11).

B.  Causes of Action

The Complaint alleges three causes of action.  The First Cause of Action alleges unlawful age discrimination in violation of the Age Discrimination in Employment Act. 29 U.S.C. §§ 621-34, 623(a)(1) ("ADEA") (<u>id.</u> ¶¶ 38-49).  Sister Kaczmarek alleges that she was over the age of 40, suffering from the adverse action of her termination on September 7 2018 (<u>id.</u> ¶¶ 39, 40).  She claims she was "exceptionally well qualified" for her positions as professor and archivist (<u>id.</u> ¶ 46) while that work was still performed after her termination (<u>id.</u> ¶¶ 47-49) by younger, lower-salaried, and less qualified persons (<u>id.</u> ¶ 49).

The Second Cause of Action claims that Defendants discriminated against Sister Kaczmarek based on her religion, 42 U.S.C. § 2000e-2(m), as a Roman Catholic and a member of religious order (id. ¶¶ 51-56).  Sister Kaczmarek claims that Vice President of Academic Affairs Dr. Mimi Steadman stated that "the nun must go" (id. ¶ 54).  Sister Kaczmarek now complains that she was fired as archivist despite this position being held by a Grey Nun through almost all its existence (id. ¶¶ 26, 56).  Her termination manifested Defendants' religious bias (id. ¶ 56).

Finally, the Third Cause of Action alleges that Defendants retaliated against Sister Kaczmarek in violation of Title VII, 42 U.S.C. § 2000e-3(a) (id. ¶¶ 58-62[2]).  She alleges D'Youville's failure to investigate her complaints against her termination was retaliatory (id. ¶¶ 59, 60, 61), see Cox v. Onondaga Cnty. Sheriff's Dep't, 760 F.3d 139, 146 (2d Cir. 2014).

> C. Defendants' Motion for Summary Judgment (Docket No. 44) and Facts Asserted Therein

The parties stipulated to dismissal of Defendant Charles Urlaub, Chairman of the Board of D'Youville (Docket No. 13; see Docket No. 1, Compl. ¶ 2).  Remaining Defendants D'Youville and President Clemo then answered (Docket No. 14).

Defendants then moved for summary judgment arguing that Sister Kaczmarek has not established a prima facie case for her age discrimination claim and her remaining claims fail as a matter of law (Docket No. 44).

---

[2]Defendants also argue that this claim is in retaliation for age discrimination, Docket No. 44, Defs. Memo. at 9, although they later concede that Sister Kaczmarek has not alleged retaliation under the ADEA, Docket No. 52, Defs. Reply Memo. at 9 & n.6; see also Docket No. 44, Defs. Memo. at 17-19 (arguing the retaliation claim under Title VII fails).

Generally, Sister Kaczmarek admits (see Docket No. 48) the facts alleged in Defendants' Statement of Undisputed Material Facts (Docket No. 44).  Material disputed facts are noted below.

D'Youville, founded by the Grey Nuns (Docket No. 44, Lorrie Clemo Decl. ¶ 4), offers degrees in various undergraduate, masters, post-graduate, and doctoral programs (Docket No. 44, Defs. Statement ¶ 1).  Dr. Clemo, herself a Catholic, is the first layperson serving as President of D'Youville since January 2017 (id. ¶¶ 3, 4).

Although D'Youville's Education Department once enjoyed a robust student enrollment, the numbers of enrolled students diminished over time due (for example) that the Province of Ontario changed academic requirements for teaching there that made it less attractive for Canadian students to enroll (id. ¶ 6).  In 2002, D'Youville's Education Department had 1,142 students enrolled but in 2016 there were only 5 students enrolled in that department's 4 programs (Docket No. 44, Clemo Decl. ¶ 6, Ex. A).  In the fall of 2016, there were concerns that the low enrollment would jeopardize accreditation of the Education Department (Docket No. 44, Defs. Statement ¶ 7).  In October 2016, D'Youville suspended programs offered by the Education Department (id. ¶ 8).

In 2016, Sister Kaczmarek was assigned to perform part-time archivist duties for the University Library (Docket No. 44, Defs. Statement ¶ 13).  Although she lacked specific archival training or a degree in library science, D'Youville appointed Sister Kaczmarek archivist.  According to Sister Kaczmarek, she was appointed to substitute for one of three courses she no longer taught.  (See Docket No. 44, Defs. Memo. at 6; Docket No. 44, Defs. Atty. Affirm. Ex. A, Pl. EBT Tr. at 112-13; Docket No. 44, Clemo Decl. ¶ 15).  She

believed to keep her employed during the suspension of the Education Department (see Docket No. 49, Pl. Memo. at 5).

Defendants claim that the D'Youville administration hoped that suspension of programs in the Education Department could be used to consider restructuring of programs (Docket No. 44, Defs. Statement ¶ 9). Sister Kaczmarek, however, denies this and she does not believe that D'Youville planned to restructure (Docket No. 48, Pl. Statement ¶ 9). D'Youville's administration, however, concluded that Education Department programs could not be resuscitated and thus were discontinued due to the lack of enrollment (Docket No. 44, Defs. Statement ¶ 10).

In August 2018, D'Youville discontinued the Education Department programs (Docket No. 44, Clemo Decl. ¶¶ 9-12). D'Youville notified Sister Kaczmarek and other faculty members of their termination (id. ¶ 12).

After discontinuance of the programs, Vice President Steadman negotiated with AAUP president Dr. Marge Goodman the retrenchment and on whether there are suitable vacant positions for members of the Education Department (Docket No. 44, Defs. Statement ¶ 11). Looking at faculty vacancies, D'Youville's administration concluded that there were no suitable vacancies (id.). D'Youville argues that the AAUP also did not identify suitable openings for the retrenched faculty (Docket No. 44, Clemo Decl. ¶ 14).

Sister Kaczmarek however disputes limited vacancies to faculty positions and claimed that she was qualified to work in Campus Ministry or the Learning Center among non-academic departments (Docket No. 48, Pl. Statement ¶ 11). Sister Kaczmarek never spoke to anyone about any position aside from archivist or Chief Mission Officer (Docket No. 44, Defs. Statement ¶ 12); she explains that she did not wish to overstep the union-

management reassignment process (Docket No. 48, Pl. Statement ¶ 12).   Sister Kaczmarek testified that she applied, but was not selected, for D'Youville's Chief Mission Officer position in September 2018 (Docket No. 44, Defs. Memo. at 6 n.6, citing Docket No. 44, Defs. Atty. Affirm. Ex. A, Pl. EBT Tr. at 78-79).

Once D'Youville concluded that the Education Department would be discontinued, the school then found that a dedicated archivist was unnecessary (Docket No. 44, Defs. Statement ¶ 14), with President Clemo asserting that a small institution such as D'Youville did not need an archivist, rather than what she termed "extremely large research institutions such as Cornell University" (Docket No. 44, Clemo Decl. ¶ 15).   D'Youville abolished that position and to date have not filled it, using library staff to obtain D'Youville's historical materials (id. ¶ 16).

Sister Kaczmarek, however, denies that she could not have been retained part-time in that position.   She in fact anticipated staying on part-time.   Further, Sister Kaczmarek contends that the Education Department and archivist position are unrelated (Docket No. 48, Pl. Statement ¶ 14).   She argues that she and the Head Librarian were never told about losing the archivist position (id.).

Defendants state that in January 2019, D'Youville offered an online Masters in Curriculum and Instruction program ("C&I Program") to three students in India (Docket No. 44, Defs. Statement ¶ 15).   Sister Kaczmarek, however, disputes the approval of this program by the New York State Education Department, claiming that the application to the state was made under false pretenses given D'Youville's retrenchment at the same time (Docket No. 48, Pl. Statement ¶ 15).   Defendants represent that the C&I Program was not for teacher preparation or credentialing students (Docket No. 44, Defs. Statement

¶ 16).  They claim that they offered the C&I Program because of contracts D'Youville entered with Indian entities to offering joint program to their students (id.).  Sister Kaczmarek denies this, asserting that the C&I Program was offered more broadly than to contracted Indian students (see Docket No. 48, Pl. Statement ¶ 16).  Defendants claim that the C&I Program ran only in 2019 and served those three students.  Defendants also denied any obligation to have Education Department faculty return.  (Docket No. 44, Defs. Statement ¶ 17.)

Sister Kaczmarek disagrees.  First, she questioned the qualifications of administrators and adjunct faculty that taught the C&I Program.  Second, she believes the Memorandum of Agreement with the AAUP bound D'Youville to reinstate former Education Department faculty regardless of the number of students in the program. (Docket No. 48, Pl. Statement ¶ 17.)  Third, Sister Kaczmarek claims that D'Youville continued the C&I Program into 2022 (id.), although she later admits that the Program was not offered after 2019 (Docket No. 44, Defs. Statement ¶ 18; cf. Docket No. 48, Pl. Statement ¶ 18).

The AAUP filed a grievance seeking reinstatement of the retrenched faculty but D'Youville prevailed in binding arbitration (Docket No. 44, Defs. Statement ¶ 18; cf. Docket No. 48, Pl. Statement ¶ 18).

After extension of the briefing schedule (Docket Nos. 47, 51, 45, 48), responses were due by January 9, 2023 (Docket No. 47), and replies by February 3, 2023 (Docket No. 51).  Upon timely briefing (Docket Nos. 48, 49, 52), the Motion is deemed submitted.

### III.   Discussion

A.  Generally Applicable Standards

1.  Summary Judgment

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," id.

The movant seeking summary judgment has the burden (through pleadings, depositions, answers to interrogatories, admissions, affidavits, and other materials, Fed. R. Civ. P. 56(c)(1)) to demonstrate the absence of a genuine issue of material fact, Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003).

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion," Addicks v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper," Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The function of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue of fact for trial," Anderson, supra, 477 U.S. at 249.  "Assessment of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment," Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment, Anderson, supra, 477 U.S. at 252.  A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  That is, there must be evidence from which the jury could reasonably find for the nonmoving party, Anderson, supra, 477 U.S. at 252.

### 2.  Federal Employment Discrimination

As for the First Cause of Action, it is unlawful for an employer to discriminate against any individual with respect to her terms, conditions, or privileges of employment because of her age, 29 U.S.C. § 623(a)(1).   The Second Cause of Action alleges discrimination based on Sister Kaczmarek's religion.  Title VII of the Civil Rights Act of 1964, as amended, makes unlawful employment practice (including discharge) because of the employee's religion, see 42 U.S.C. § 2000e-2(a)(1).   An unlawful employment practice "is established when the complaining party demonstrates that . . . religion, . . . was a motivating factor for any employment practice, even though other factors also motivated the parties," 42 U.S.C. § 2000e-2(m).

The ADEA and Title VII have the same standards for liability.   Employment discrimination is established either by direct evidence, Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985); Teamsters v. United States, 431 U.S. 324, 358 n.44, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), see Haskell v. Kaman Corp., 743 F.2d 113, 119 (2d Cir. 1984) (age discrimination), or proof of circumstances through the burden shifting analysis of McDonnell Douglas v. Green,

411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), that an inference of discrimination may be drawn, Haskell, supra, 743 F.2d at 119; see Delaney v. Bank of America Corp., 766 F.3d 163, 167-68 (2d Cir. 2014) (age discrimination) (Docket No. 44, Defs. Memo. at 9); Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010) (same).

To state a prima facie case for age or religion discrimination, Sister Kaczmarek must demonstrate that she is a member of a protected group (alleging either that she is over 40 years old or practices a particular religion); that she qualified for her position; that she was subject to an adverse employment action; and that this action occurred under circumstances that give rise to an inference of discrimination, Grastorf v. Community Bank, N.A., No. 19CV1627, 2023 WL 2266336, at *7 (W.D.N.Y. Feb. 28, 2023) (Skretny, J.), reconsideration denied, 2023 WL 3570437 (W.D.N.Y. May 19, 2023) (Skretny, J.); Terry v. Ashcroft, 336 F.3d 128, 137-38 (2d Cir. 2003) (race, gender, and age discrimination); Holcomb v. Iona College, 521 F.3d 130, 138 (2d Cir. 2008) (religion discrimination); Aljarah v. Citigroup Inc., 450 F. Supp. 3d 329, 333 (W.D.N.Y. 2020) (Geraci, C.J.) (religion discrimination).  Further, she must establish that her age or religion motivated D'Youville's decision, Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993) (id. at 10-11); University of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 348-49, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013) (quoting 42 U.S.C. § 2000e-2(m)).  This prima facie case standard is not onerous, Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); see Aljarah, supra, 450 F. Supp. 3d at 333 (de minimis standard, quoting Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000)).

Upon Sister Kaczmarek meeting this prima facie case burden, the burden of persuasion shifts to Defendants to articulate some legitimate, non-discriminatory reason for their action, McDonnell Douglas, supra, 411 U.S. at 802.  Once Defendants meet this burden, the burden shifts back to Plaintiff to show that the stated non-discriminatory reason was pretext, id. at 807.  The ultimate burden of persuasion remains with Plaintiff, Burdine, supra, 450 U.S. at 253.

### 3.  Title VII Retaliation

Title VII makes it unlawful for an employer "to discriminate against an employee 'because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter,'" Terry, supra, 336 F.3d at 140 (quoting 42 U.S.C. § 2000e-3(a)).

To establish a prima facie case of retaliation under Title VII for her Third Cause of Action, Sister Kaczmarek must show (1) her participation in a protected activity known to the employer, (2) an employment action disadvantaging her, and (3) a causal connection between the protected activity and the adverse action, Terry, supra, 336 F.3d at 140-41 (quotation omitted).  The protected activity must be the but-for cause of the adverse action, Nassar, supra, 570 U.S. at 362 (id.).

One retaliatory employment action is the failure to investigate a complaint that can dissuade an employee from filing a charge, see Cox, supra, 760 F.3d at 146 (Docket No. 49, Pl. Memo. at 16-17).

### B.  Parties' Contentions

Defendants first argue that Sister Kaczmarek's First Cause of Action fails as a matter of law because Sister Kaczmarek has not established her prima facie case

14

because there is no evidence showing circumstances giving rise to an inference of age discrimination (Docket No. 44, Defs. Memo. at 9-13).   They contend that Sister Kaczmarek lacked evidence of discriminatory or retaliatory animus because D'Youville laid off Plaintiff and other Education Department faculty pursuant to the AAUP collective bargaining agreement retrenchment process (id. at 1, 2).   Furthermore, her termination was for a legitimate, nondiscriminatory reason, the plummeting student enrollment in Education Department programs (id. at 3, 13-14).   Defendants next argue that Sister Kaczmarek cannot show pretext for their reason for the termination (id. at 14-17).

Next, Defendants claim that Sister Kaczmarek's religious discrimination (Second Cause of Action) and retaliation (Third Cause of Action) claims fail to state a claim (id. at 17-19, 19-22).

Sister Kaczmarek responds that she was "an experienced, long serving and eminently qualified individual from her position as a Professor of Education and her position as an Archivist and her replacement by a far less qualified and much younger individual," (Docket No. 49, Pl. Memo. at 1).  She states that issues of material fact exist precluding summary judgment (id. at 14 (questions on extension of tenure in other University programs)).   She claims the established her prima facie case for age and religious discrimination (id. at 12-14 (age), 14-16 (religion)) as well as her retaliation claim (id. at 16-17).

Defendants reply that Sister Kaczmarek lacked admissible evidence to show an issue of material fact (Docket No. 52, Defs. Reply Memo. at 2-4), for example she lacked evidence for her claim that someone in the D'Youville administration said that the nun

had to go.  They contend that Plaintiff did not clearly allege the basis for retaliation, presumably for religious discrimination (id. at 9-10).

####    C.  Age Discrimination

As for Sister Kaczmarek's First Cause of Action and the prima facie case for age discrimination, she does not allege direct evidence of age (or religion) discrimination. Sister Kaczmarek was in the protected class and suffered an adverse employment action. She established that she was qualified as a professor and became qualified as an archivist, although she does not have a degree in library science.

Sister Kaczmarek, however, has not shown an inference of discrimination arising from D'Youville's retrenchment of the Education Department.  Although she claims that younger faculty were retained while she and older members were laid off, Sister Kaczmarek does not provide the ages of the other faculty (both those retained and those let go) to establish that claim.  She does not point out that younger faculty members, for example, were reassigned from the Education Department while she was not.  She also does not allege the age of the adjunct faculty or administrators that taught the three students in 2019 in the University's C&I Program even if one assumes that program is equivalent to the retrenched Education Department programs Sister Kaczmarek taught in.  She alleges (cf. Docket No. 1, Compl. ¶ 33) that Education Department programs she taught continued after retrenchment but Sister Kaczmarek offers no proof of continued teaching.  Finally, she has not shown that her age was the but-for reason for her termination.  Sister Kaczmarek argues anecdotally that D'Youville retained four employees in their thirties while letting her go (Docket No. 49, Pl. Memo. at 13) as well as other, unnamed older employees (id., citing Docket No. 44, Defs. Atty. Affirm. Ex. A, Pl.

EBT Tr. at 166).  She does not state the position these younger employees held and whether they replaced older employees.

Sister Kaczmarek thus has not met her <u>prima facie</u> burden establishing an inference of age discrimination and Defendants' Motion for Summary Judgment (Docket No. 44) dismissing the First Cause of Action is granted.

Even if Sister Kaczmarek somehow meets the not onerous <u>prima facie</u> burden, Defendants proffered non-discriminatory reasons for her termination, which this Court now accepts, <u>see</u> <u>Escribano v. Greater Hartford Acad. of Arts</u>, No. 3:08 CV 248, 2009 WL 10677574, at *4 (D. Conn. Aug. 28, 2009), <u>aff'd</u>, 449 F. App'x 34 (2d Cir. 2011) (summary Order).  D'Youville contends that enrollment in the Education Department decreased to single figures thus for budgetary reasons the school had to retrench those programs. Despite Sister Kaczmarek's argument that enrollment is cyclical and she anticipated increased enrollment in 2022-24 (<u>cf.</u> Docket No. 48, Pl. Statement ¶ 10), D'Youville had decreased enrollment over the last two decades, much due to the changes in teaching certification in Ontario, a prime source of the student population for D'Youville.

Even if D'Youville reduced enrollment two years before retrenching the Education Department programs (<u>cf.</u> Docket No. 1, Compl. ¶ 14), Sister Kaczmarek has not shown this decision was to further discriminate against her.

Defendants point out that this retrenchment applied to the entire Education Department (Docket No. 44, Defs. Memo. at 15) and is not limited to the more senior faculty members.  Sister Kaczmarek was one of an entire faculty who was let go. Similarly, in <u>Escribano</u>, Maria Escribano, a Hispanic teacher, alleged ethnicity discrimination in her lay off while the defendant school argued that she was let go due to

budget cuts.  The district court accepted the school's proffered reasons that the program Escribano taught in was cut due to budgetary constraints with evidence in that record of at least one Caucasian teacher also losing her classes, Escribano, supra, 2009 WL 10677574, at *1, 4.

The diminished enrollment here without regard to the age of the faculty members provides a non-discriminatory reason for eliminating Sister Kaczmarek's faculty position. The burden then would shift to Sister Kaczmarek to show that this reason was pretext. She cannot meet that burden.  Absent allegations of the age of the faculty or disputing the enrollment figures, Sister Kaczmarek cannot show that diminishing enrollment was a mere pretext for age discrimination.

Therefore, this Court grants Defendants' Motion (Docket No. 44) for Summary Judgment dismissing the First Cause of Action.

D.  Religion Discrimination

For her Second Cause of Action and absent allegation of direct evidence of discrimination, Sister Kaczmarek needs to establish her prima facie case for employment discrimination based upon her religion.  Despite suing D'Youville University, an institution founded by the Grey Nuns, Sister Kaczmarek alleged membership in a protected class as a Roman Catholic and a member of the Grey Nuns order.  Her terminations as a professor and archivist were adverse actions and (as stated for her age discrimination claim) Sister Kaczmarek was qualified for either position.

As with her age claim, the issue here is the inference of discriminatory intent for her religion.  With her faculty position, Sister Kaczmarek has not established D'Youville's retrenchment of the Education Department manifested an inference of discriminatory

intent.  Although she alleges that she was terminated because she was a Grey Nun, D'Youville terminated the entire Education Department without regard to their faith or membership in a religious order.

Termination of Sister Kaczmarek's position as archivist, however, is problematic. Sister Kaczmarek testified that she was the last Grey Nun employed by D'Youville (Docket No. 44, Defs. Atty. Affirm. Ex. A, Pl. EBT Tr. at 172).  She alleges that the archivist was a position in the University Library and not the Education Department (Docket No. 48, Pl. Statement ¶ 14; see Docket No. 49, Pl. Memo. at 5) while Defendants argue that she was "assigned to perform part-time Archivist duties for the College library" (Docket No. 44, Defs. Statement ¶ 14).  This poses an issue of material fact as to which entity administered Sister Kaczmarek's archivist position, was it the Education Department or the Librarian.  If the archivist was under the Librarian, Defendants invoking student enrollment in the Education Department to justify terminating the archivist position is pretextual.

Historically, a Grey Nun served as D'Youville's archivist, save for 5 years of the last 58 years of the existence of that position.  Sister Kaczmarek claims that D'Youville Vice President Steadman said two things, that D'Youville reassigned Sister Kaczmarek to the archivist position to keep her employed and stated that "the nun must go" (Docket No. 1, Compl. ¶ 54; Docket No. 48, Pl. Memo. Ex. 5; Docket No. 49, Pl. [Amended] Memo. at 15, Ex. 5).  Plaintiff's exhibit opposing Defendants' Motion, however, is a note claiming the President Clemo stated that "the nun has to go" (Docket No. 48, Pl. Ex. 5).

She also alleges that she was rejected when she applied for the Chief Mission Officer position, a position traditionally held by a Grey Nun.

Drawing inferences form the evidence in her favor as opponent to the Motion for Summary Judgment, Sister Kaczmarek thus meets the light <u>prima facie</u> burden that her termination as part-time archivist was due to her religion and membership in an order. The burden then shifts to Defendants to articulate a non-discriminatory reason for terminating her as archivist.

President Clemo vehemently denies saying "the nun has to go," claiming that Sister Kaczmarek first attributed the statement to a now former Vice President (Steadman) and later claimed that President Clemo said it (Docket No. 44, Clemo Decl. ¶ 20).  Further, Defendants cite Sister Kaczmarek's deposition testimony that (1) she misidentified who said that; (2) that she did not hear the statement herself; and (3) she learned of it from an unnamed colleague (Docket No. 44, Defs. Atty. Affirm., Ex. A, Pl. EBT Tr. at 173-75).  They also dispute the admissibility of the handwritten note (Docket No. 48, Pl. Ex. 5) stating that "the nun has to go" which was not produced in discovery and no provenance was given for it (Docket No. 52, Defs. Reply Memo. at 8 n.5).

This presents additional issues of material fact whether (or who) made the statement that may have shown D'Youville or President Clemo's religious bias despite being from an institution established by a Catholic religious order.  The statement that "the nun has to go" undermines any non-discriminatory reason for terminating the archivist position (and Sister Kaczmarek's employment).

Unlike the enrollment losses in the Education Department programs, there is no objective reason for ending the archivist position.   D'Youville only argues that administrators concluded that as a smaller institution it no longer needed an archivist. D'Youville here merely implies (without alleging) the added costs for retaining a part-time

archivist, using the retrenchment of the Education Department as an opportunity to eliminate an archivist for a small institution.  D'Youville established and retained an archivist in 1965 while being a smaller institution than Cornell the comparator President Clemo now uses to disclaim D'Youville's need for an archivist (cf. Docket No. 44, Clemo Decl. ¶ 15).

There are issues of fact precluding judgment to Defendants.  Defendants also fail to meet their burden establishing a non-discriminatory reason for discontinuing the archivist position (and terminating Sister Kaczmarek as a result).  Therefore, this Court need not reach the final McDonnell Douglas step of Sister Kaczmarek showing that Defendants' stated reason was pretext.

Thus, this Court grants in part (dismissing Sister Kaczmarek's discrimination claim for the retrenchment as professor in the Education Department) and denies in part (retaining her claim for termination as archivist) Defendants' Motion for Summary Judgment (Docket No. 44) dismissing the Second Cause of Action.

E.  Retaliation for Complaints

For her Third Cause of Action retaliation claim in violation of Title VII (hence her religion discrimination claim), Sister Kaczmarek alleges Defendants retaliated against her for complaining about retrenchment of the Education Department by not investigating her complaints.  Her complaints about age discrimination, however, were not alleged are thus not actionable.

Sister Kaczmarek first must exhaust this retaliation claim before the State Division of Human Rights or the EEOC, see Terry, supra, 336 F.3d at 151; Hamzik v. Office for People with Dev'al Disabilities, 859 F. Supp. 2d 265, 277 (N.D.N.Y. 2012).  This Court

observes that Sister Kaczmarek did not indicate retaliation in her New York State Division of Human Rights charge by checking the "retaliation" box on the charge but stated a claim for retaliation for opposing discrimination in the narrative (Docket No. 44, Clemo Decl. Ex. B, charge form at 2, addendum at 3).   The State Division of Human Rights Charge form frames retaliation only in assisting in filing a discrimination complaint, rather than a more general retaliation contention.

One exception to this exhaustion requirement is if the administrative charge is completed by the employee without assistance of counsel, Hamzik, supra, 859 F. Supp. 2d at 277, for the purpose of the EEOC or State Division of Human Rights Charge is to alert the agency of the claimed discrimination with a focus upon the allegations made in the charge itself and the description of the discriminatory conduct, Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003); Hamzik, supra, 859 F. Supp. 2d at 277, often made in the narrative attached to the Charge.

Here, Sister Kaczmarek exhausted her retaliation claims despite failing to check the Charge form identifying that claim.

As for the substantive elements of her Title VII retaliation prima facie case, Sister Kaczmarek needs to establish participation in a protected activity, an employment action disadvantaging her, and causal connection between her protected activity and the employment action.

Sister Kaczmarek claims the protected activity was her complaints about the retrenchment and apparently her termination as archivist.   In August 2018, the Education Department was retrenched and Sister Kaczmarek was laid off (Docket No. 1, Compl. ¶¶ 13-14; Docket No. 44, Defs. Statement ¶ 10; see Docket No. 48, Pl. Ex. 1 (termination

letter)).   Also at that time, D'Youville eliminated Sister Kaczmarek's archivist position (Docket No. 1, Compl. ¶¶ 26, 27), although the termination letter (Docket No. 48, Pl. Ex. 1) does not expressly state the end of the archivist position.   That letter merely terminated Sister Kaczmarek while discussing the closing of the Education Department (id.). Sister Kaczmarek complained about her dismissals on September 11 and October 2, 2018 (Docket No. 1, Compl. ¶¶ 30, 59).   She also alleged communicating with the Board of Trustees on September 5, 2018, also complaining about the retrenchment of the Education Department (id.); this later complaint does not reach the end of the archivist position and is not actionable here as a Title VII retaliation.   These complaints, however, are not included in this record.   Sister Kaczmarek then filed her State Division of Human Rights Charge dated December 10, 2018 (Docket No. 44, Clemo Decl. Ex. B).

As for the employment action disadvantaging Sister Kaczmarek, she has not stated such an action.   Sister Kaczmarek claims the failure to investigate her complaints was the retaliatory employment action (Docket No. 1, Compl. ¶¶ 60-61), alleging that this failure to investigate would dissuade a reasonable employee from making a charge of discrimination (id. ¶ 62).   She alleges this despite her later filing a discrimination claim with the New York State Division of Human Rights.

First, Sister Kaczmarek has not shown how she was disadvantaged by Defendants turning a deaf ear to her complaints.   These complaints appear to seek reconsideration of the retrenchment decision.   Absent the text of her complaints, this Court cannot determine whether it addressed the professorship (and her age discrimination claim, where she did not allege a retaliation claim under the ADEA) or the archivist (and her Title VII religion discrimination claim) or both.   Sister Kaczmarek has not shown retaliatory

action in Defendants not investigating her complaints about her termination.  Within weeks of her complaints Sister Kaczmarek filed her New York State Division of Human Rights charge (which led to this action) and evidence no harm from Defendants' silence to her complaints.  She thus has not shown how she was disadvantaged by the Defendants' inaction on her complaints.

Sister Kaczmarek cites Cox for the proposition that failure to investigate a complaint is an adverse employment action (Docket No. 49, Pl. Memo. at 16-17).  Cox, however, involved Deputies Steven Cox and others filing EEOC charges and the Onondaga Sheriff's Department not investigating that charge, 760 F.3d at 146.  The Second Circuit stated that "an employer's failure to conduct an investigation when faced even with an internal complaint, much less a charge to the EEOC, might be viewed as evidence of an indifference" to discrimination "if not acquiescence in it," id.  The court held that employees who complain of discrimination may not claim retaliation "simply because the employer undertakes a factfinding investigation," id. at 147.  An employer's investigation "may constitute a cognizable retaliatory action if carried out so as to result in a hostile work environment, constructive discharge, or other employment consequences of a negative nature, or if conducted in such an egregious manner as to 'dissuade a reasonable worker from making or supporting a charge of discrimination,'" id. (quoting Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 57, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)).

The Second Circuit in Terry also recounted the Title VII standard for retaliation because the employee made a discrimination charge, Terry, supra, 136 F.3d at 141-42.

There, Andrew Terry filed a charge with the Equal Employment Opportunity office and alleged retaliation for filing that charge, id. at 134, 135.

Here, Sister Kaczmarek complains about her retrenchment and termination and argues that Defendants retaliated against her by not investigating her complaints before she filed her State Division of Human Rights charge.  This Court does not have the text of these complaints (or D'Youville's response).   D'Youville's investigation of these complaints would revisit restoring Education Department programs or the archivist position despite diminishing enrollment and budgetary constraints as well as determining whether Sister Kaczmarek could return to the University in some capacity.   Sister Kaczmarek also does not allege that Defendants did not investigate her State Division of Human Rights charge.

Considering the totality of circumstances and the alleged retaliatory acts, Sister Kaczmarek has not established how she was disadvantaged by them.  If Defendants failed to respond to her complaints about the retrenchment and termination, Sister Kaczmarek eventually filed her State Division of Human Rights charge without apparent hinderance.  There appears to have been no harm from Defendants not responding to her complaints.  Her claimed injuries (cf. Docket No. 49, Pl. Memo. at 17) arose from her termination and not the failure of Defendants to investigate her complaints (which in essence were to reconsider the termination decision).

Absent an employment action that disadvantaged Sister Kaczmarek, there is nothing to connect with the alleged protected activity (her filing complaints).  Therefore, this Court grants Defendants' Motion for Summary Judgment (Docket No. 44) dismissing the Third Cause of Action.

## IV.    Conclusion

Plaintiff Sister Nancy Kaczmarek has not met her <u>prima facie</u> case burden to assert age discrimination against Defendants under the Age Discrimination in Employment Act in her First Cause of Action.  Defendants' Motion for Summary Judgment (Docket No. 44) against this Cause of Action is granted.

As for the Second Cause of Action, Sister Kaczmarek fails to allege religion discrimination in the retrenchment of her professorship in the Education Department but she raises material issues of fact whether D'Youville terminated her as its archivist due to religious bias or bias against a Grey Nun.  Defendants' Motion (<u>id.</u>) for Summary Judgment is denied.

As for her Third Cause of Action, Sister Kaczmarek has not shown retaliatory action from Defendants not investigating her complaints about her termination.  Within weeks of her complaints she filed her New York State Division of Human Rights charge (which led to this action) and there is no evidence asserted of harm from Defendants' silent response to her complaints.  These complaints in fact sought reconsideration of the retrenchment and termination that Sister Kaczmarek later challenged before the State Human Rights Division and ultimately here before this Court.  Defendants' Motion (<u>id.</u>) is granted.

Thus, Defendants' Motion for Summary Judgment (<u>id.</u>) is granted in part and denied in part.

Given the remaining claims in the Second Cause of Action, this Court renews referral of mediation to Joseph Saeli (<u>cf.</u> Docket Nos. 26, 27), giving the parties until August 15, 2023, to conduct a mediation session with Mr. Saeli.  This Court then will

schedule a Status Conference to discuss resolution of this matter and (if necessary) scheduling this case for trial.

## V.   Orders

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 44) is GRANTED IN PART (dismissing the First and Third Causes of Action and so much of the Second Cause of Action alleging religion discrimination in Plaintiff's layoff as a professor) and DENIED IN PART (retaining so much of the Second Cause of Action alleging religion discrimination in terminating Plaintiff as archivist at D'Youville University).

FURTHER, that the parties shall re-engage with Mediator Joseph Saeli, schedule, and participate in good faith in a further mediation session on or before August 15, 2023.

FURTHER, that within 10 days of the mediation session and for any subsequent sessions, the mediator shall file a Mediation Certification setting forth the progress of mediation.

FURTHER, that this mediation process shall be completed by September 15, 2023.

FURTHER, that this Court shall separately schedule a Status Conference following the mediator's certification as described above.

SO ORDERED.


Dated:          June 26, 2023
                Buffalo, New York


                                                s/William M. Skretny
                                               WILLIAM M. SKRETNY
                                               United States District Judge